IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2012 MAR 30  PM 3: 43

CLERK _____
SO. DIST. OF GA.

| | |
|---|---|
| SECURITY LIFE OF<br>DENVER INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>DHARMISTHA D. SHAH and<br>SOUTHEAST BUSINESS NETWORK<br>INC.,<br><br>    Defendants<br>_____<br><br>SOUTHEAST BUSINESS<br>NETWORK, INC.,<br><br>    Counterclaimant,<br><br>v.<br><br>SECURITY LIFE OF<br>DENVER INSURANCE COMPANY,<br><br>    Counter Defendant,<br>_____<br><br>DHARMISTHA D. SHAH,<br><br>    Cross-claimant,<br><br>v.<br><br>SOUTHEAST BUSINESS<br>NETWORK, INC. and EDWARD J.<br>HOWIE<br><br>    Cross Defendant,<br>_____ | CASE NO.  CV411-8 |

```
SOUTHEAST BUSINESS          )
NETWORK, INC.,              )
                           )
     Counter-Cross-claimant, )
                           )
v.                          )
                           )
DHARMISTHA D. SHAH          )
                           )
     Counter-Cross Defendant. )
                           )
_____ )
```

## O R D E R

Before the Court is Defendant Dharmistha Shah's ("Defendant Shah") Motion to Dismiss Southeast Business Network, Inc.'s ("SEBN") Cross-Claims.[1]  (Doc. 34.)  For the reasons that follow, Defendant Shah's Motion to Dismiss SEBN's Cross-claims is **GRANTED**.

However, SEBN will have fourteen days from the date of this order to file an amended cross-claim as to count four of its original cross-claim.  SEBN may also include in its amended cross-claim relevant claims as to punitive damages and attorney's fees not inconsistent with this order.

---

[1] Defendant Shah has also filed a Motion to Strike SEBN's Answer and Defenses to Cross-claim.  (Doc. 35.)  Defendant SEBN has since filed an amended answer adding additional Cross Defendant Edward Howie.  (Doc. 47.)  Because Defendant Shah's amended answer supersedes her original answer (Doc. 17) and the Court has already denied Defendant Shah's identical motion to strike SEBN's amended answer (Doc. 63), Defendant Shah's original motion to strike (Doc. 35) is **DISMISSED AS MOOT**.

Normal responsive pleading deadlines will then apply. Both parties should also be aware that the Court will not accept any filing—whether the amended complaint, an answer, motion, brief, response, or reply—that incorporates by reference any factual allegation or argument contained in any documents already filed before this Court. Any further motions or responses must be stand-alone filings that independently contain all the factual allegations and arguments that the filing party wishes the Court to consider.

**BACKGROUND**

In July of 2006, Plaintiff Security Life of Denver Insurance Company ("Security Life") issued Sushila K. Shah ("the insured") a flexible premium adjustable life insurance policy ("the policy"), which became effective July 19, 2006.[2] (Doc. 1 ¶ 9.) The policy provided that upon the insured's death, Security Life would pay a benefit of $5,000,000. (Id. ¶ 10.) At the time the policy became effective, the DDS Trust[3] was named as the sole owner and

---

[2] For the purposes of Defendant Shah's motion to dismiss, SEBN's allegations set forth in its complaint will be taken as true. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).
[3] By all accounts, the DDS Trust is controlled by the Shah family. (Doc. 98 at 2.)

beneficiary of the policy and Jitendra Kotadia was the
Trustee of the DDS Trust. (Id. ¶ 9.)

In August of 2006, SEBN, through its sole principal
Edward J. Howie, entered into an agreement letter ("2006
agreement letter") with the DDS Trust. (Doc. 26-1, Ex. A
at 2-3.) SEBN would pay the premiums for the insurance
policy for months six through twenty-four. (Id. at 2) At
the end of the two years, the owner of the Policy—the DDS
Trust—would then repay the premiums plus ten percent
interest and five percent of the face value of the policy
to SEBN. (Id.) If the DDS trust was unable to pay after
two years, the 2006 agreement letter provided that "the
trust will engage [SEBN] to sell the policy in the Life
Insurance Settlement Market at which time the owner of the
policy will receive 15% of the proceeds of the sale." (Id.
at 3.) SEBN and Mr. Dipak Shah, Defendant Shah's husband
entered into a similar agreement.⁴ Soon thereafter, the DDS

---

⁴ Much is made in the pleadings, particularly in SEBN's
cross-claim (Doc. 26), about the involvement of Mr. Dipak
Shah. While Mr. Shah may have had authority to act on
behalf of the DDS Trust, he is not a named defendant in
this case. It is the Court's belief that no party has
sought to implead Mr. Shah, and as such, he remains a non-
party to this action. Any allegations that Mr. Shah's
actions in his individual capacity have caused injury are
non-justiciable against the named parties because he is not
a party to this action. SEBN has gone so far as to
even suggest that Mr. Shah was an agent of Defendant Shah.

4

Trust prepared and executed an "Assignment of Life Insurance Policy as Collateral" ("2006 assignment") whereby the DDS Trust collaterally assigned certain rights to SEBN.[5] Security Life recorded the collateral assignment.

On February 21, 2007, SEBN and the DDS Trust modified the 2006 agreement letter with another agreement letter ("2007 agreement letter"). (Doc. 26-1, Ex. C at 8.) Pursuant to the 2007 agreement letter, after the second year of the policy, the DDS Trust will repay SEBN according to the terms of the 2006 agreement letter or, if the DDS Trust is "unable to pay its obligation to [SEBN], then the trust will transfer ownership of the life insurance policy to [SEBN] to sell the policy in the Life Insurance Settlement Market at which time the owner of the policy will receive 15% of the net proceeds of the sale." (Id. at

---

(Doc. 26 ¶ 8.)   Without more, the Court rejects such contentions.
[5] In relevant part, the assignment provided that SEBN could

   (a) collect the net proceeds of the policy from Insurer when it becomes a claim by death or maturity; (b) surrender the policy and receive the surrender value; (c) obtain loans or advances on the policy from Insurer; (d) collect all distributions or shares of surplus, dividends, deposits, and additions to the policy now or hereafter made or apportioned . . . (e) exercise nonforfeiture provisions.

(Doc. 1, Ex. B at 3.)   Significantly, the assignment reserved and excluded "the right to designate and change the beneficiary."   (Id.)

9.) The transfer of the policy's ownership was the material difference between the 2006 agreement letter and the 2007 agreement letter. Nowhere in the 2006 agreement letter or 2007 agreement letter did SEBN or the DDS Trust indicate what would happen if the insured died after the second year or if the policy was never sold.

After the two-year period expired, SEBN sent several letters to the DDS Trust concerning repayment options, per the 2006 and 2007 agreement letters. (Doc. 47, Ex. D; Id., Ex. E at 1.) A dispute arose over the amount that was to be repaid. (Doc. 47, Ex. E at 2, 3.) SEBN claimed that $503,279.99, including both principal and interest, was due and the DDS Trust disputed the claimed amount of interest. (Id.)

At about the same time, in August of 2008, Mr. Shah submitted a "Release of Assignment" form to Security Life seeking to release SEBN's collateral assignment. (Doc. 26-1, Ex. D at 14.) Mr. Shah's signature is on the form as a supposed "Co-Investor" of the DDS Trust. (Id.) Mr. Shah's letter with the release form claimed that there was a "material breach [with assignee SEBN] in fulfilling the terms of the agreement" and that the DDS Trust-SEBN agreement "was not fully completed." (Doc. 99-2, Ex. 1 at 46.) On August 20, 2008, Security Life released SEBN's

6

assignment on the policy. (Id., Ex. E at 18.) SEBN informed Security Life that the release was not signed by an authorized individual and Security Life placed SEBN's assignment back on the policy. (Doc. 26-1, Ex. F at 20.)

Also in August of 2008, the DDS Trust attempted to designate Mr. Shah as an irrevocable beneficiary to the policy. Security Life denied the designation on September 5, 2008 because Mr. Shah was a licensed agent with the parent company of Security Life, in violation of business guidelines. (Doc. 99-2, Ex. 1 at 41.) Ultimately, the DDS Trust designated Defendant Shah as the irrevocable beneficiary, and Security Life recorded the designation on September 5, 2008. (Doc. 1, Ex. C at 1.) SEBN, as an assignee, was never required to consent to Defendant Shah's designation, as the assignor expressly reserved the right to designate a beneficiary.[6] SEBN now contends that Security Life should have denied this irrevocable beneficiary request because Security Life should have known there was a dispute between the DDS Trust and SEBN. (Doc. 7 ¶¶ 4, 5.) SEBN then attempted to take ownership of the policy with Security Life. (Doc. 99-1, Ex. 1 at 3.) Security Life refused to transfer ownership because the DDS

---

[6] "[T]he right to designate and change the beneficiary" is reserved and excluded from the assignment. (Doc. 1, Ex. B at 3.)

7

Trust did not, as required, sign the transfer of ownership forms.   (Id.)

Later in September of 2008, the DDS Trust designated Defendant Shah as a secondary collateral assignee on the policy and Security Life recorded the assignment on October 18, 2008.   (Doc. 99-2, Ex. 1 at 33.)   SEBN was also not required to consent to such a designation.   In fact, SEBN and Howie never complained to Defendant Shah, the DDS Trust, or Security Life about the secondary assignment until these proceedings commenced.   (Doc. 99, Ex. 3 at 199:5.)

On September 12, 2008, SEBN brought suit in the Superior Court of Chatham County against the DDS Trust and Mr. Shah for breaching alleged contractual obligations under the 2006 and 2007 agreement letters.   (Doc. 99-1, Ex. 1 at 10.)   Unbeknownst to Security Life, SEBN and the DDS Trust entered into a cooperation agreement on October 22, 2008, which agreed to transfer ownership of the policy to SEBN.   (Doc. 99-4, Ex. 2 at 12.)   Curiously, the cooperation agreement, was not signed by the DDS Trust, but rather the insured on the policy.   (Id.)   Mr. Shah and SEBN also entered into a settlement agreement providing for the dismissal of the lawsuit without prejudice, transferring ownership of the policy to SEBN, paying $50,000 to Mr. Shah

for commissions, and paying Mr. Shah $150,916.65 for premiums paid on the policy. (Id. at 14-17.)

Following the cooperation and settlement agreements, the DDS Trust attempted to transfer ownership of the policy to SEBN and to name Defendant Shah as Trustee of the DDS Trust (Doc. 99-3, Ex. 1 at 17-25), but the form had not been properly signed by the collateral assignees—Defendant Shah and SEBN. After resubmitting the forms, the ownership change was reported by Security Life on November 11, 2008 and Defendant Shah became the Trustee of the DDS Trust. (Doc. 99-2, Ex. 1 at 32.) Security Life confirmed that Defendant Shah would remain the irrevocable beneficiary. (Id.) SEBN, through Howie, then began to try and sell the policy, per the 2007 agreement letter, but was unsuccessful in doing so. (Doc. 99-5, Ex. 2 at 13-39.) Any sale of the policy would have required Defendant Shah's signature as irrevocable beneficiary. (Doc. 99-6, Ex. 3 at 212:16-23.)

Almost five months later, on April 7, 2009, Defendant Shah first alleged the forgery of her signature on the transfer of ownership forms. (Doc. 99-3, Ex. 1 at 6.) Defendant Shah claimed that the transfer of ownership was void because she did not sign as the irrevocable beneficiary (id.), signing an affidavit stating that the

9

signatures on the ownership transfer forms were not hers (Doc. 99-3, Ex. 1 at 4). As a result of the investigation into the forgery and the disputed ownership, Security Life notified both Defendant Shah and SEBN in July of 2009 that it would not make any record changes to the policy until the disputes were resolved.

The following year, in March of 2010, Security Life sent a lapse notice to SEBN stating that the policy would lapse because no premium payments had been made and "the cash value of [the] policy is not sufficient at this time to cover the premium that is now due." (Doc. 99-4, Ex. 2 at 55.) A final grace period notice was sent on April 20, 2010 informing SEBN that the policy would terminate unless $101,345.74 was paid to bring the premium current. (Id., Ex. 2 at 54.) The policy lapsed. Because Defendant Shah never received notice of the lapses, Security Life agreed to reinstate the policy once Defendant Shah paid $90,549.99 towards the premium. (Doc. 99-2, Ex. 1 at 30.) Following receipt of the payment, the policy was reinstated.

In the most critical event of this saga, on August 12, 2010, the insured died, resulting in benefits being owed under the policy. (Doc. 1 ¶ 15.) Both SEBN and Defendant Shah claimed the policy proceeds. (Id. ¶ 17.) Defendant Shah claimed $241,466.64—the amount in premiums paid by

10

Defendant Shah and the DDS Trust—as well as 10% interest as first assignee and the balance of the policy proceeds. (Doc. 99-1, Ex. 1 at 20.)   SEBN claimed 85% of the net amount, per the terms of the 2007 agreement letter, totaling $4,294,369.49 plus premiums and interest.   (Id., Ex. 1 at 25.)  On November 18, 2010, Security Life told the parties that the current owner of the policy, SEBN, was entitled to 85% of the net amount, or $4,294,369.49.   (Id., Ex. 1 at 8.)   Security Life then filed this interpleader action, on January 21, 2011, to resolve the competing policy claims.  (Doc. 1.)

The procedural history of this case is as lengthy and complicated as the factual background. Luckily, full elaboration is not needed for the matter currently before this Court.  As part of the interpleader action, SEBN filed a cross-claim against Defendant Shah.   (Doc. 26.)   SEBN's cross-claim contained six counts:  1)  release of the policy's proceeds to SEBN, as collateral assignee of the policy; 2) breach of insurance agreements; 3) rescission; 4) fraud and conspiracy to defraud; 5) punitive damages; and 6) attorney's fees.   (Id.)   Defendant Shah requested dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).   (Doc. 34.)   In response, SEBN contends that it

11

has sufficiently alleged claims upon which relief can be granted.    (Doc. 40.)

## ANALYSIS

### I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Aschroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[7]  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."    Iqbal, 129 S. Ct. at 1949 (internal quotations omitted).    "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true.

---

[7]  Iqbal makes clear that Twombly has been the controlling standard on the interpretation of Federal Rule of Civil Procedure 8 in all cases since it was decided.    Iqbal, 129 S. Ct. at 1953 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8 . . . [that] in turn governs the pleading standard in all civil actions and proceedings in the United States district courts." (internal quotations and citations omitted)).

Sinaltrainal, 578 F.3d at 1260.   However, this Court is
"not bound to accept as true a legal conclusion couched as
a factual allegation." Iqbal, 129 S. Ct. at 1949-50.
Moreover, "unwarranted deductions of fact in a complaint
are not admitted as true for the purpose of testing the
sufficiency of plaintiff's allegations." Sinaltrainal, 578
F.3d at 1268.   That is, "[t]he rule 'does not impose a
probability requirement at the pleading stage,' but instead
simply calls for enough facts to raise a reasonable
expectation that discovery will reveal evidence of the
necessary element." Watts v. Fla. Int'l Univ., 495 F.3d
1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S.
at 545).   In addition, if on a motion under Rule 12(b)(6),
"matters outside the pleadings are presented to and not
excluded by the court, the motion must be treated as one
for summary judgment under Rule 56." Fed. R. Civ. P.
12(d).   Significantly, "[a]ll parties must be given a
reasonable opportunity to present all the material that is
pertinent to the motion." Id.

II.   CHOICE OF LAW

Federal jurisdiction in this case is based on
diversity of citizenship, and Georgia is the forum state.
As a federal court exercising diversity jurisdiction, the
Court must examine the laws of Georgia, including its

13

choice of law, to determine what law applies.   See McMahan
v. Toto, 256 F.3d 1120, 1131 (11th Cir. 2001) (citing
Klaxon Co. Stentor Elec. Mfg. Co., 313 U.S. 487, 486
(1941)); Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d
1228, 1235 (11th Cir. 1995).   Georgia applies the
traditional rule of lex loci contractus, Convergys Corp. v.
Keener, 276 Ga. 808, 811, 582 S.E.2d 84, 86 (2003), and an
"insurance contract is constructively made at the place
where the contract is delivered."   McGow v. McCurry, 412
F.3d 1207, 1217 (11th Cir. 2005) (quoting Fed. Ins. Co. v.
Nat'l Distrib. Co., 203 Ga. App. 763, 767, 417 S.E.2d 671,
674-75 (1992)).

    While Georgia law provides that "contracts of
insurance are interpreted by ordinary rules of contract
construction," Lambert v. Alfa Gen. Ins. Corp., 291 Ga.
App. 57, 58, 660 S.E.2d 889, 891 (2008) (citations
omitted), the issue before the Court is not the
interpretation of the policy, but rather of the 2006 and
2007 agreement letters.   Neither agreement contains a
choice of law provision, and so the Court must look to
Georgia law to determine choice of law rules.   The Georgia
Supreme Court has held that to determine where a contract
was made, the court must "determine where the last act
essential to the completion of the contract was done."

Gen. Tel. Co. of S.E. v. Trimm, 252 Ga. 95, 95, 311 S.E.2d
460, 461 (1984) (citing Peretzman v. Borochoff, 58 Ga. App.
838, 838, 200 S.E. 331, 331 (1938)).  With such an
approach, contracts are to be governed as to their "nature,
validity, and interpretation by the law of the place where
they were made, except where it appears from the contract
itself that it is to be performed in a State other than
that in which it was made, in which case . . . the laws of
that sister State will be applied."  Trimm, 252 Ga. at 95,
311 S.E.2d at 461.

While contested by the parties in numerous other
briefs and filings, the Court cannot discern any challenge
presently as to the applicable choice of law for SEBN's
cross-claim.  Therefore, the Court will proceed and apply
the relevant choice of law provisions.  Here, even assuming
SEBN's allegation that Defendant Shah, the DDS Trust, or
Mr. Shah first solicited SEBN (Doc. 26 ¶ 26), the last
essential act to the completion of both the 2006 and 2007
agreement letters was the presentment, execution, and
signature of each of these agreement letters, which all
occurred in Florida and took effect at the time each was
returned to SEBN.  See O.C.G.A. § 13-3-3.  All of the
additional operative facts also concern Florida—Defendant
Shah and the insured resided in Florida, the payments were

15

sent to Florida, and the policy itself was delivered in Florida. Thus, for purposes of this order, the Court finds that Florida law is controlling.[8]

III. DEFENDANT SHAH'S MOTION TO DISMISS SEBN'S CROSS-CLAIM

A.   Insurance Proceeds

SEBN's cross-claim against Defendant Shah first alleges that SEBN is the lawful assignee and entitled to immediate possession of the insurance proceeds. (Doc. 26, Cross-claim ¶ 4.) Defendant Shah has moved to dismiss on the grounds that a claim for insurance proceeds "is not a recognizable, independent cause of action and otherwise fails to state the elements of any cause of action." (Doc. 34 at 5.) Defendant Shah also raises issue that SEBN has referenced two 2007 agreements—the 2007 agreement letter between SEBN and the DDS Trust and another letter between SEBN and Mr. Shah.[9] (Id.)

Even taking SEBN's pleadings as true, the Court finds that SEBN has not sufficiently stated a plausible claim for which relief can be granted. SEBN, as assignee, shall have the sole right to "collect the net proceeds of the policy

---

[8]  In any event, however, the Court is persuaded that applying either Florida or Georgia law would not significantly impact considerations on this present motion.
[9]  Indeed, the Court notes the regularity of which non-party Mr. Dipak Shah appears in the pleadings and briefs throughout this case.

from the insurer when it becomes a claim by death" (Doc. 17, Ex. C at 3.)    However, any such claim must be brought against Security Life, not Defendant Shah.[10]    It is impossible for this Court to compel such an outcome on Defendant Shah, even though she may have numerous associations with the policy.

Further, because no recognizable claim was presented in the cross-claim, SEBN's response attempts to re-plead and re-characterize count one.[11]    (Doc. 40 at 4.)    However, nowhere in SEBN's cross-claim does it ever allege any wrongful breach of the policy terms or any knowingly false

---

[10] The Court cannot construe count one as to seek any sort of declaratory relief regarding policy ownership.   In fact, SEBN expressly states that it "is the rightful assignee under the policy and is entitled to immediate possession of the insurance proceeds."    (Doc. 26, Cross-claim, ¶ 4.) Indeed, without expressing opinion on the other claims of action, SEBN has, in fact, filed a counterclaim against Security Life alleging that Security Life "breached the contract by failing to protect SEBN's assignee's interests."   (Doc. 7, Counterclaim ¶ 4.)

[11] SEBN's response states that

> [i]n Count One, SEBN contends Defendant SHAH has wrongfully breached the terms of the policy and SEBN's assignment rights by a knowingly false request for an irrevocable beneficiary designation, and by knowingly and falsely claiming the obligations owed to SEBN as secured by its assignment had been fully satisfied. In fact, the assignment was given to SEBN as collateral for repayment of a nonrecourse loan to the DDS Trust.

(Doc. 40 at 4.)

17

requests for irrevocable beneficiary designations. Further, to the extent that count one relies on alleged breaches of what SEBN has defined as the "2007 agreements," SEBN cannot seek recovery against non-party Mr. Shah, the signatory to one of SEBN's "2007 agreements" that purportedly gives rise to the cause of action in count one. Mr. Shah is a non-party thereby precluding any entitlement to relief for claims arising under agreements he entered not connected with the policy. Therefore, Defendant Shah's Motion to Dismiss is **GRANTED** as to count one.

B.   Breach of Insurance Agreements

SEBN's second count concludes that Defendant Shah and "her agent Mr. Shah" acted in bad faith when they "repeatedly breached the insurance agreement and assignment issued to SEBN by fraudulently signing a release of assignment, by fraudulently designating [Defendant Shah] as an irrevocable beneficiary purportedly with SEBN's authority, and by fraudulently informing Plaintiff that all obligations secured by the assignment had been fully performed." (Doc. 26 at 22.) Defendant Shah has moved to dismiss on the grounds that count two failed to identify the specific agreement and assignment provisions at issue. (Doc. 34 at 6-7.) SEBN counters that Defendant Shah "should be able to properly conclude" and "understood all

18

too well which provisions" of the agreements and assignments were in issue. (Doc. 40 at 5.)

Unfortunately for SEBN, this is hardly the heightened pleading standard requirements of Twombly and Iqbal that bind this Court and every federal court. The plausibility standards are not subjectively based on what a particular party understands or should have discerned from the pleadings. Pleadings must allege facts sufficient to support the elements of a claim. See Fed. R. Civ. P. 8(a). SEBN's claims are simply legal conclusions couched as overbroad factual assertions. See Iqbal, 129 S. Ct. at 1949-50; Davilia v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003). Nowhere in its cross-claim does SEBN adequately outline the facts surrounding Defendant Shah's "fraudulently" signing of the release of assignment, designating herself as an irrevocable beneficiary with SEBN's authority, and informing Security Life that the assignment obligations had been performed. Defendant Shah first became involved in the policy as an irrevocable beneficiary in September of 2008. SEBN's blind claim that Defendant Shah's "breach of this contract," is exactly the types of statements that Twombly and Iqbal seek to curtail. It goes without mention that there are numerous agreements and contracts involved in this case—from the policy itself,

to the 2006 and 2007 agreement letters, as well as the assignments and designation forms to Security Life.

Remarkably too, for the first time in its entire answer and cross-claim, SEBN alleges that Mr. Shah was acting as an agent of Defendant Shah. (Doc. 26, Cross-claim ¶ 8.) There is nothing in the lengthy narrative provided by SEBN that would raise an expectation of such a fact and nothing pled in the cross-claim to support this assertion. Mr. Shah remains a non-party; even assuming he was acting as Defendant Shah's agent, SEBN's pleadings wholly fail to advance any facts sufficient to support such an allegation. The cross-claim pleadings as to count two do not make apparent, beyond mere conclusory allegations, how such claims would rise to anything more than naked assertions. As a result, SEBN is precluded from any possible relief. See Iqbal, 129 S. Ct. at 1949. Accordingly, Defendant Shah's Motion to Dismiss as to count two is **GRANTED**.

C. Rescission

In count three, SEBN asks the Court to rescind Defendant Shah's irrevocable designation based on fraudulent acts of Defendant Shah and Mr. Shah. (Doc. 26, Cross-claim ¶¶ 11-14.) SEBN contends that Defendant Shah and Mr. Shah "conspired to defraud SEBN and [Security

20

Life] by fraudulently designating [Defendant Shah] as an irrevocable beneficiary under the policy in order to wrongfully deprive [SEBN] of its rights under the agreements, the policy and the assignment."   (Id. ¶ 12.) Defendant Shah argues that SEBN has failed to properly allege the necessary elements of fraud.   (Doc. 34 at 7.)

   SEBN is again incorrect in asserting that they are entitled to relief based on a purported fraudulent irrevocable beneficiary designation.[12]   SEBN was never

---

[12] The Court also notes that under Georgia or Florida law, the elements of a rescission claim are not materially different.   In Georgia, O.C.G.A. § 11-2-721 provides rescission as a viable remedy for material misrepresentations or fraud in contract claims.   Further, in order to obtain rescission of a contract because of fraud, "precise allegations and particular proof of all necessary elements of fraud" are required. Cone Mills Corp. v. A. G. Estes, Inc., 399 F. Supp. 938, 943 (N.D. Ga. 1975) (citing Am. Food Svcs., Inc. v. Goldsmith, 121 Ga. App, 686, 688, 175 S.E.2d 57, 59 (1970)).   For rescission in Georgia, a party must show

> (1) that the plaintiff (or someone acting for the plaintiff) made the representations; (2) that at the time they were known to be false (or what the law regards as the equivalent of knowledge); (3) the representations were for the intention and purpose of deceiving the defendant; (4) that the defendant relied on the representations; and (5) that the defendant sustained a loss or damage as the proximate result of the representations.

Cone Mills Corp. v. A.G. Estes, Inc., 399 F. Supp. 938, 94-44 (N.D. Ga. 1975).   Alternatively, Florida courts have found that "[r]escission and cancellation are harsh remedies and therefore not favored by the courts." Rood Co. v. Bd. of Pub. Instruction of Dade Cnty., 102 So.2d 139

required to sign or consent to Defendant Shah's irrevocable beneficiary designation as a collateral assignee. Until the case before this Court, SEBN never disputed or contested to Security Life the beneficiary designation. (Doc. 99-6, Ex. 3 at 181:6-11.) By SEBN's own admissions, it had not yet taken ownership of the policy and the DDS Trust had expressly retained the rights to designate beneficiaries. Simply, SEBN cannot be entitled to rescission of the beneficiary designation contract—to which it is neither a party nor required signatory—simply on the

---

(1958). However, "[r]escission is available for fraudulent non-disclosure under narrow circumstances where legal claim will not lie." Billian v. Mobil Corp., 710 So.2d 984, 989 (Fla. 4th DCA 1998). Rescission is proper "where there has been intentional concealment of any fact material to the transaction, not just fact materially affecting value of property as is required for legal cause of action." Id.

The elements of the cause of action of rescission of a contract in Florida are:

> (1) The character or relationship of the parties; (2) The making of the contract; (3) The existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) That the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) If the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; [and] (6) [T]hat the moving party has no adequate remedy at law.

Id. at 790.

basis that it was the collateral assignee.   There are no
facts sufficient to properly allege such a claim.   Thus,
Defendant Shah's Motion to Dismiss as to count three is
**GRANTED**.

>    D.   <u>Fraud and Conspiracy to Defraud</u>

As to count four of SEBN's cross-claim, SEBN alleges
that Defendant Shah and non-party Mr. Shah "from the very
beginning agreed and conspired together to obtain the use
of SEBN loan funds" with the intent to "prevent SEBN from
obtaining any repaying of its loan proceeds or any policy
benefits."   (Doc. 26 ¶ 16.)   To do so, SEBN alleges that
Defendant Shah and non-party Mr. Shah made "numerous
knowingly false representations to SEBN and [Security Life]
in pursuit of their conspiracy."   (<u>Id.</u> ¶ 17.   Defendant
Shah moves to dismiss, contending that SEBN has failed to
state a claim upon which relief can be granted.   (Doc. 34
at 10.)

Federal Rule of Civil Procedure 9(b) provides that in
"alleging fraud or mistake, a party must state with
particularity the circumstances constituting fraud."   In
order to do so, the claimant must set forth

>    (1) precisely what statements were made in what
>    documents   or   oral   representations   or   what
>    omissions were made, (2) the time and place of
>    each such statement and the person responsible
>    for making (or, in the case of omissions, not

making) same, (3) the content of such statements
and the manner in which they misled the
plaintiff, and (4) what the defendants obtained
as a consequence of the fraud.

Brooks v. Blue Cross & Blue Shield of Fla. Inc., 116 F.3d

1364, 1371 (11th Cir. 1997); see also Ziemba v. Cascade

Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001).  Such a

particularity requirement is critical to alert defendants

to the "precise misconduct with which they are charged."

West Coast Roofing & Waterproofing, Inc. v. Johns Manville,

Inc., 287 F. App'x. 81, 86 (11th Cir. 2008).  Rule 9(b)

requires plaintiff to identify the allegedly fraudulent

representations with particularity.

     The Court finds that count four of the cross-claim is

pled with insufficient particularity requirements under the

Federal Rules of Civil Procedure and case law of the

Eleventh Circuit Court of Appeals.  Therefore, Defendant

Shah's motion is **GRANTED**.  However, SEBN shall have

fourteen days from the date of this order to file an

amended cross-claim as to count four of its original cross-

claim.  Normal responsive pleading deadlines will then

apply.  Again, both parties should be aware that the Court

will not accept any filing—whether the amended complaint,

an answer, motion, brief, response, or reply—that

incorporates by reference any factual allegation or

argument contained in any documents already filed before this Court. Any further motions or responses must be stand-alone filings that independently contain all the factual allegations and arguments that the filing party wishes the Court to consider.

### E.   Punitive Damages & Attorney's Fees

SEBN's fifth count of its cross-claim seeks punitive damages for counts three and four because Defendant Shah acted "both intentionally and with reckless disregard for the consequences." (Doc. 26 ¶ 21.) Defendant Shah requests dismissal of count five because SEBN has not pled an independent recognizable cause of action. (Doc. 34 at 12-13.) SEBN contends that it did properly allege independent causes of action. (Doc. 40 at 10.)

Finally, SEBN's sixth and final cross-claim count is for the award of attorney's fees pursuant to all of the claims asserted. (Doc. 26 ¶¶ 23-24.) Defendant SEBN avers that SEBN did not cite a statute or enforceable contract warranting recovery of attorney's fees, thereby entitling her to dismissal. (Doc. 34 at 10.) SEBN contends otherwise. (Doc. 40 at 10.)

Given the Court's findings as to count four, Defendant Shah's motion to dismiss counts five and six is **GRANTED**. Making no determination on the validity of any possible

punitive damage or attorney's fees claims that SEBN may bring, the Court will allow SEBN to include in its amended cross-claim relevant claims for punitive damages and attorney's fees not inconsistent with anything provided in this order. These pleadings, too, must comply with the relevant reference incorporation requirements already outlined by the Court.

**CONCLUSION**

For the foregoing reasons, Defendant Shah's Motion to Dismiss SEBN's Cross-claim is **GRANTED**. SEBN will have fourteen days from the date of this order to file an amended cross-claim as to count four of its original cross-claim. SEBN may also include in its amended cross-claim relevant pleadings to punitive damages and attorney's fees not inconsistent with anything provided in this order. Normal responsive pleading deadlines will then apply. The Court will not accept any filing—whether the amended complaint, answer, motion, brief, response, or reply—that incorporates by reference any factual allegation or argument contained in any documents filed before this Court. Any further motions or responses must be stand-alone filings that independently contain all the factual allegations and arguments that the filing party wishes the Court to consider.

Nothing in this order should dissuade the parties from continuing to pursue mediation or alternative dispute resolution. The Court is convinced that—in a case as complicated as this—dispute resolution may very well reach a suitable outcome for all the parties involved. If such a result were to occur, the parties should immediately notify the Court and file a joint stipulation of dismissal.

SO ORDERED this **30**ᵗʰ day of March 2012.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA