IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SECURITY LIFE OF                    )
DENVER INSURANCE COMPANY,           )
                                    )
        Interpleader Plaintiff,     )
                                    )
v.                                  )    CASE NO. CV411-008
                                    )
DHARMISTHA D. SHAH and              )
SOUTHEAST BUSINESS NETWORK,         )
INC.,                               )
                                    )
        Defendants                  )
                                    )
                                    )
                                    )
SOUTHEAST BUSINESS                  )
NETWORK, INC.,                      )
                                    )
        Counterclaimant,            )
                                    )
v.                                  )
                                    )
SECURITY LIFE OF                    )
DENVER INSURANCE COMPANY,           )
                                    )
        Counter Defendant,          )
                                    )
                                    )
                                    )
                                    )
DHARMISTHA D. SHAH,                 )
                                    )
        Cross-claimant,             )
                                    )
v.                                  )
                                    )
SOUTHEAST BUSINESS                  )
NETWORK, INC. and EDWARD J.)
HOWIE                               )
                                    )
        Cross Defendant,            )
                                    )
                                    )

```
SOUTHEAST BUSINESS          )
NETWORK, INC.,              )
                           )
     Counter-Cross-claimant, )
                           )
v.                         )
                           )
DHARMISTHA D. SHAH         )
                           )
     Counter-Cross Defendant. )
_____ )
```

## O R D E R

Before the Court is Interpleader Plaintiff Security Life of Denver Insurance Company's ("Security Life") Motion for Interpleader and Summary Judgment on Defendant Southeast Business Network, Inc.'s ("SEBN") Counterclaim. (Doc. 98.) For the reasons that follow, Security Life's Motion for Summary Judgment on SEBN's counterclaim and Motion for Interpleader are **GRANTED**. Additionally, Security Life's request for attorney's fees and disbursements is **DENIED**. Security Life is **DISMISSED** from this action.[1] The Clerk of Court is **DIRECTED** to **TERMINATE** Interpleader Plaintiff and Counter Defendant Security Life.

## BACKGROUND

In July of 2006, Security Life issued Sushila K. Shah ("the insured") a flexible premium adjustable life insurance policy ("the policy"), which became effective

---

[1] Plaintiff's Motion for Hearing (Doc. 101) is **DISMISSED AS MOOT**.

July 19, 2006.[2]   (Doc. 1 ¶ 9.)   The policy provided that upon the insured's death, Security Life would pay a benefit of $5,000,000.   (Id. ¶ 10.)   At the time the policy became effective, the DDS Trust[3] was named as the sole owner and beneficiary of the policy and Jitendra Kotadia was the Trustee of the DDS Trust.  (Id. ¶ 9.)

In August of 2006, SEBN, through its sole principal Edward J. Howie, entered into an agreement letter ("2006 agreement letter") with the DDS Trust.  (Doc. 26-1, Ex. A at 2-3.)   SEBN would pay the premiums for the insurance policy for months six through twenty-four.  (Id. at 2)   At the end of the two years, the owner of the policy—the DDS Trust—would then repay the premiums plus ten percent interest and five percent of the face value of the policy to SEBN.  (Id.)   If the DDS trust was unable to pay after two years, the 2006 agreement letter provided that "the trust will engage [SEBN] to sell the policy in the Life Insurance Settlement Market at which time the owner of the policy will receive 15% of the proceeds of the sale."  (Id. at 3.)   SEBN and Mr. Dipak Shah, Defendant Shah's husband, entered into a similar agreement.   Soon thereafter, the DDS

_____

[2] The Court construes the facts in the light most favorable to the nonmoving party—SEBN.   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).
[3] By all accounts, the DDS Trust is controlled by the Shah family.  (Doc. 98 at 2.)

3

Trust prepared and executed an "Assignment of Life Insurance Policy as Collateral" ("2006 assignment") whereby the DDS Trust collaterally assigned certain rights to SEBN.[4] Security Life recorded the collateral assignment.

On February 21, 2007, SEBN and the DDS Trust modified the 2006 agreement letter with another agreement letter ("2007 agreement letter"). (Doc. 26-1, Ex. C at 8.) Pursuant to the 2007 agreement letter, after the second year of the policy, the DDS Trust will repay SEBN according to the terms of the 2006 agreement letter or, if the DDS Trust is "unable to pay its obligation to [SEBN], then the trust will transfer ownership of the life insurance policy to [SEBN] to sell the policy in the Life Insurance Settlement Market at which time the owner of the policy will receive 15% of the net proceeds of the sale." (Id. at 9.) The transfer of the policy's ownership was the

---

[4] In relevant part, the assignment provided that SEBN could

> (a) collect the net proceeds of the policy from Insurer when it becomes a claim by death or maturity; (b) surrender the policy and receive the surrender value; (c) obtain loans or advances on the policy from Insurer; (d) collect all distributions or shares of surplus, dividends, deposits, and additions to the policy now or hereafter made or apportioned . . . ; [and] (e) exercise nonforfeiture provisions.

(Doc. 1, Ex. B at 3.) Significantly, the assignment reserved and excluded "the right to designate and change the beneficiary." (Id.)

4

material difference between the 2006 agreement letter and the 2007 agreement letter. Nowhere in the 2006 agreement letter or 2007 agreement letter did SEBN or the DDS Trust indicate what would happen if the insured died after the second year or if the policy was never sold.

After the two-year period expired, SEBN sent several letters to the DDS Trust concerning repayment options, per the 2006 and 2007 agreement letters. (Doc. 47, Ex. D; Id., Ex. E at 1.) A dispute arose over the amount that was to be repaid. (Doc. 47, Ex. E at 2, 3.) SEBN claimed that $503,279.99, including both principal and interest, was due and the DDS Trust disputed the claimed amount of interest. (Id.)

At about the same time, in August of 2008, Mr. Shah submitted a "Release of Assignment" form to Security Life seeking to release SEBN's collateral assignment. (Doc. 26-1, Ex. D at 14.) Mr. Shah's signature is on the form as a supposed "Co-Investor" of the DDS Trust. (Id.) Mr. Shah's letter with the release form claimed that there was a "material breach [with assignee SEBN] in fulfilling the terms of the agreement" and that the DDS Trust-SEBN agreement "was not fully completed." (Doc. 99-2, Ex. 1 at 46.) On August 20, 2008, Security Life released SEBN's assignment on the policy. (Id., Ex. E at 18.) SEBN

informed Security Life that the release was not signed by an authorized individual and Security Life placed SEBN's assignment back on the policy. (Doc. 26-1, Ex. F at 20.)

Also in August of 2008, the DDS Trust attempted to designate Mr. Shah as an irrevocable beneficiary to the policy. Security Life denied the designation on September 5, 2008 because Mr. Shah was a licensed agent working for the parent company of Security Life and it was a violation of business guidelines to have Mr. Shah as an irrevocable beneficiary. (Doc. 99-2, Ex. 1 at 41.) Ultimately, the DDS Trust designated Defendant Shah as the irrevocable beneficiary, and Security Life recorded the designation on September 5, 2008. (Doc. 1, Ex. C at 1.) SEBN, as an assignee, was never required to consent to Defendant Shah's designation, because the assignor expressly reserved the right to designate a beneficiary.[5] SEBN now contends that Security Life should have denied this irrevocable beneficiary request because Security Life should have known there was a dispute between the DDS Trust and SEBN. (Doc. 7 ¶¶ 4, 5.) SEBN then attempted to take ownership of the policy with Security Life. (Doc. 99-1, Ex. 1 at 3.) Security Life refused to transfer ownership because the DDS

_____

[5] "[T]he right to designate and change the beneficiary" is reserved and excluded from the assignment. (Doc. 1, Ex. B at 3.)

6

Trust did not, as required, sign the transfer of ownership forms. (Id.)

Later in September of 2008, the DDS Trust designated Defendant Shah as a secondary collateral assignee on the policy and Security Life recorded the assignment on October 18, 2008. (Doc. 99-2, Ex. 1 at 33.) SEBN was also not required to consent to such a designation. In fact, SEBN and Howie never complained to Defendant Shah, the DDS Trust, or Security Life about the secondary assignment until these proceedings commenced. (Doc. 99, Ex. 3 at 199:5.)

On September 12, 2008, SEBN brought suit in the Superior Court of Chatham County against the DDS Trust and Mr. Shah for breaching alleged contractual obligations under the 2006 and 2007 agreement letters. (Doc. 99-1, Ex. 1 at 10.) Unbeknownst to Security Life, SEBN and the DDS Trust entered into a cooperation agreement on October 22, 2008, in which SEBN and the DDS Trust agreed to transfer ownership of the policy to SEBN. (Doc. 99-4, Ex. 2 at 12.) Curiously, the cooperation agreement was not signed by the DDS Trust, but rather the insured on the policy. (Id.) Mr. Shah and SEBN also entered into a settlement agreement providing for the dismissal of the lawsuit without prejudice, transferring ownership of the policy to SEBN,

and paying Mr. Shah $50,000 for commissions and $150,916.65 for premiums paid on the policy. (Id. at 14-17.)

Following the cooperation and settlement agreements, the DDS Trust attempted to transfer ownership of the policy to SEBN and to name Defendant Shah as Trustee of the DDS Trust (Doc. 99-3, Ex. 1 at 17-25), but the form had not been properly signed by the collateral assignees— Defendant Shah and SEBN. After resubmitting the forms, the ownership change was reported by Security Life on November 11, 2008 and Defendant Shah became the Trustee of the DDS Trust. (Doc. 99-2, Ex. 1 at 32.) Security Life confirmed that Defendant Shah would remain the irrevocable beneficiary. (Id.) SEBN, through Howie, then began to try and sell the policy, per the 2007 agreement letter, but was unsuccessful in doing so. (Doc. 99-5, Ex. 2 at 13-39.) Any sale of the policy would have required Defendant Shah's signature as irrevocable beneficiary. (Doc. 99-6, Ex. 3 at 212:16-23.)

Almost five months later, on April 7, 2009, Defendant Shah first alleged the forgery of her signature on the transfer of ownership forms. (Doc. 99-3, Ex. 1 at 6.) Defendant Shah claimed that the transfer of ownership was void because she did not sign as the irrevocable beneficiary (id.), signing an affidavit stating that the

8

signatures on the ownership transfer forms were not authentic (Doc. 99-3, Ex. 1 at 4). As a result of the investigation into the forgery and the disputed ownership, Security Life notified both Defendant Shah and SEBN in July of 2009 that it would not make any record changes to the policy until the disputes were resolved.

The following year, in March of 2010, Security Life sent a lapse notice to SEBN stating that the policy would lapse because no premium payments had been made and "the cash value of [the] policy is not sufficient at this time to cover the premium that is now due." (Doc. 99-4, Ex. 2 at 55.) A final grace period notice was sent on April 20, 2010 informing SEBN that the policy would terminate unless $101,345.74 was paid to bring the premium current. (Id., Ex. 2 at 54.) The policy lapsed. Because Defendant Shah never received notice of the lapses, Security Life agreed to reinstate the policy once Defendant Shah paid $90,549.99 towards the premium. (Doc. 99-2, Ex. 1 at 30.) Following receipt of the payment, the policy was reinstated.

In the most critical event of this lengthy saga, on August 12, 2010, the insured died, resulting in benefits being owed under the policy. (Doc. 1 ¶ 15.) Both SEBN and Defendant Shah claimed the policy proceeds. (Id. ¶ 17.) Defendant Shah claimed $241,466.64—the amount in premiums

paid by Defendant Shah and the DDS Trust—as well as 10%
interest as first assignee and the balance of the policy
proceeds. (Doc. 99-1, Ex. 1 at 20.) SEBN claimed 85% of
the net amount, per the terms of the 2007 agreement letter,
totaling $4,294,369.49 plus premiums and interest. (Id.,
Ex. 1 at 25.)

Faced with competing claims to the proceeds of the
policy, Security Life filed this interpleader action.
(Doc. 1.) SEBN filed a counterclaim alleging that Security
Life breached its contractual obligations to SEBN, thereby
failing to protect SEBN's assignee's interests and "failing
to pay the insurance benefits to SEBN as assignee." (Doc.
7, Counterclaim ¶ 4.) Additionally, according to SEBN,
Security Life "further breached the contract by processing
various change requests without notice to SEBN." (Id.,
Counterclaim ¶ 5.)

Later, on February 16, 2011, Security Life filed a
motion to deposit funds and a motion to dismiss. (Doc. 6.)
The Court granted Security Life's motion to deposit funds
and denied its motion to dismiss because the SEBN
counterclaim was still pending. (Doc. 31.) The funds have
been deposited with the Court (Doc. 33) and discovery is
complete. On September 8, 2011, Security Life filed a
motion for interpleader and summary judgment on SEBN's

counterclaim. (Doc. 98.) Security Life has also requested attorney's fees and disbursements as a result of the expanded scope of this action. (Id. at 28.) In response, SEBN contends that summary judgment of the counterclaim and interpleader is improper because Security Life knowingly assisted Defendant Shah and the DDS Trust in breaching the agreements with SEBN. (Doc. 138 at 6.) Further, SEBN alleges that Security Life has no fear of double exposure and acted in bad faith, thereby precluding interpleader and summary judgment relief. (Id. at 10-13.)

**ANALYSIS**

I.    STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense-or the part or each claim of defense-on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portion of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovent to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON SEBN'S COUNTERCLAIM

In its motion, Security Life moves for summary judgment on SEBN's counterclaim because no material facts exist for trial and Security Life is entitled to judgment as matter of law. (Doc. 98 at 1.) Security Life contends that SEBN cannot maintain any claim against Security Life regarding ownership of the policy proceeds because the claim is not truly independent of the interpleader action and is factually baseless. (Id. at 2-3, 17.) In response, SEBN alleges that summary judgment is improper because Security Life acted knowingly to subvert SEBN's rights under the policy and violated its own internal procedures. (Doc. 138 at 5-6.) According to SEBN, Security Life played

13

a central role in "systematically assisting" Defendant Shah
by breaching contractual obligations of the policy and
related forms. (Id. at 12.) SEBN's counterclaim asserts
that as a result of its breach of contract, Security Life
"fail[ed] to pay the insurance benefits to SEBN as
assignee." (Doc. 7, Counterclaim ¶ 4.)

While Eleventh Circuit precedent on counterclaim
protections of an interpleader plaintiff is not fully
developed, the Eleventh Circuit has relied upon an
illustrative Third Circuit case, which is relevant for the
issue at hand. See generally Ohio Nat'l Life Assurance
Corp. v. Langkau ex rel. Estate of Langkau, 353 F. App'x
244, 248 (11th Cir. 2009) (citing Prudential Ins. Co. of
Am. v. Hovis, 553 F.3d 258, 262 (3d Cir. 2009)). In Hovis,
the Third Circuit held that a counterclaim by a claimant
against an interpleader plaintiff can be maintained only if
the claim is "truly independent of who was entitled to the
life insurance proceeds, which is the issue the
interpleader action was brought to settle." 553 F.3d at
264-65. Further, a counterclaim is not truly independent
if it simply involves an allegation that the interpleader
failed to resolve the investigation in favor of the
counterclaimant. Id. The Third Circuit opined that if the
interpleader "had immediately paid [Hovis] the proceeds of

14

[the life insurance policy], Hovis would not have brought
an action against [the interpleader] based on any of the
causes of action that were counterclaimed." Id. (citation
omitted). Thus, the inquiry for the Court becomes one of
whether it is possible to separate the counterclaims from
the interpleader action.

At present, SEBN's counterclaim is not "truly
independent." SEBN's counterclaim simply contends that
Security Life breached its contractual obligations by
"failing to pay the insurance benefits to SEBN as
assignee." (Doc. 7, Counterclaim ¶ 4.) Just as in Hovis,
SEBN has failed to argue how its counterclaim is truly
independent or how the counterclaim is not simply an
attempt to assert and entitlement to the policy's proceeds,
which is the very issue the interpleader action was brought
to resolve. See Hovis, 553 F.3d at 264-65.

Furthermore, SEBN has not met its burden of
establishing the existence of any genuine issues of
material fact to prevent summary judgment. Simply, there
is no evidence that any act or omission by Security Life
has caused damage to SEBN or that Security Life breached
any contractual obligation owed to SEBN. For example, even
taken in the light most favorable to nonmovant SEBN, no
harm was incurred as a result of Security Life's temporary

15

and inadvertent release of the collateral assignment: Security Life rejected Mr. Shah's attempt to be named a collateral assignee, and Security Life allowed Defendant Shah to be designated as an irrevocable beneficiary on the policy. Security Life simply was conducting business as the provider of the policy and entered changes and designations when requested and when done in accordance with the requirements of the policy.

Indeed, SEBN has failed to show any hint of improper motive of Security Life, beyond the conclusory allegations that Security Life "knowingly" and "systematically assisted" Defendant Shah and DDS Trust to hinder efforts of SEBN under the policy. (Doc. 138 at 12.) For example, SEBN strains to explain how it was improper for Security Life to process Defendant Shah's designation as irrevocable beneficiary. DDS Trust was well within its rights to designate Defendant Shah as an irrevocable beneficiary. (Id. at 6.) There is no evidence that Security Life should have known about any dispute regarding Defendant Shah's designation as irrevocable beneficiary. In fact, it took SEBN two years to complain to Security Life over the irrevocable beneficiary change. (Doc. 99, Ex. 3 at 199:5.)

As a result, Plaintiff is entitled to summary judgment as to SEBN's counterclaim. There is nothing "truly

independent" alleged in SEBN's counterclaim beyond the mere assertion of its entitlement to the policy's proceeds. There are no issues of fact that suggest acts or omissions by Security Life caused damage to SEBN or that Security Life breached any contractual obligations it may have had with SEBN. SEBN's counterclaim is meritless. Security Life is liable to the claimants for neither claims to the stake nor its failure to resolve the controversy. It follows, therefore, that Security Life cannot be liable to SEBN for alleged breaches of contracts simply because Security Life did not pay the policy proceeds to SEBN. There are competing claims to the policy, and as such, an interpleader action is the appropriate way to address these issues. Accordingly, Plaintiff's Motion for Summary Judgment on SEBN's counterclaim is **GRANTED**.

III. PLAINTIFF'S MOTION FOR INTERPLEADER

Security Life filed this interpleader action because it was presented with competing claims from Defendant Shah and SEBN for the death benefits of the policy. Both Defendant Shah and SEBN have filed competing crossclaims. (See Docs. 47, 161.) Security Life has deposited the policy proceeds into the registry of the Court. Security Life now seeks interpleader relief from the dispute. (Doc. 98.)

Federal Rule of Civil Procedure 22 provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). Simply, "[i]nterpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owners, avoids multiple liability by asking the court to determine the asset's rightful owner." In re Mandalay Shores Co-op. Hous. Ass'n Inc., 21 F.3d 380, 383 (11th Cir. 1994.)

Interpleader action proceeds in two stages. First, the Court determines whether interpleader action is proper and "whether to discharge the stakeholder from further liability to claimants" and second, to evaluate "the respective rights of the claimants to the interpleaded funds." Langkau, 353 F. App'x at 248 (quotation omitted). For the purposes of the current motion, the Court need only determine whether to discharge Security Life from further liability to the claimants. With regards to the first stage of interpleader, "[t]he primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder (the so-called first stage of interpleader) is whether the stakeholder legitimately fears multiple vexation directed against a single fund."    7

18

Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1704 (2001).

Having dismissed SEBN's counterclaim, Security Life's interpleader action is now properly before the Court. Security Life has received competing claims to the policy proceeds—both by SEBN and Defendant Shah—and Security Life has placed the funds into the registry of the Court. The Court is unpersuaded by SEBN's perfunctory argument that Security Life "can show no reasonable fear of double exposure to competing claims." (Doc. 138 at 9.) Both claimants are adamant about their entitlement to the policy's proceeds and it is a reasonable conclusion that had Security Life paid the policy to one claimant, the other would have brought suit.

SEBN also contends that Security Life acted in bad faith and was "involve[d] in the creation of this dispute" thereby "preclud[ing] equitable interpleader relief." (Doc. 138 at 10.) Such conclusory allegations are wholly inadequate. SEBN has not provided any plausible evidence that would suggest any impropriety or bad faith by Security Life that subverted SEBN's interests. None of SEBN's assertions that Security Life's actions—whether the temporary inadvertent release of the collateral assignment, DDS Trust making valid changes to the policy, or Security

Life freezing the policy after an affidavit from Defendant Shah of alleged forgery—suggest any bad faith, fraud, deceit, or unconscionability by Security Life.

Additionally, it is not necessary to determine which of the claimants is entitled to what portion of the policy at this time. 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1704 n.10 (2001). Indeed, the Court does not need to assess the merits of the competing claims to grant interpleader to Security Life. See Aaron v. Mahl, 502 F. Supp. 2d 804, 809 (N.D. Ind. 2007), aff'd 550 F.3d 659, 663 (7th Cir. 2008) ("[A] court [is not] required to assess the merits of the competing claims in determining whether interpleader is appropriate because the stakeholder should not be obliged at its peril to determine which of two claimants has the better claim.") (internal quotations omitted). Because Security Life is now a disinterested stakeholder in this action—with SEBN's counterclaim having been dismissed—and has deposited the policy proceeds into the registry of the Court, it has no further liability. Instead, it is sufficient for the Court to discharge the stakeholder, Security Life, and proceed to resolve the claimants' dispute on the merits. Accordingly, Plaintiff's Motion for Interpleader is **GRANTED**. The Clerk

20

of Court is **DIRECTED** to **TERMINATE** Interpleader Plaintiff Security Life.

IV.  PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS

Finally, Security Life requests attorney's fees and costs for bringing this action.  (Doc. 98 at 23.)  In support, Security Life contends that, "through no fault of its own," its involvement has expanded well beyond the scope of its "normal course of business."[6]  (Id. at 23-24.) To those ends, Security Life alleges that "as a result of the other parties' actions," it has been "drawn into contentious and expensive litigation involving a dispute soley between the other parties."  (Id. at 24.)  In response, SEBN objects to any award of attorney's fees or disbursements because "[Security Life] has offered SEBN and this Court no basis upon which to independently assess" whether it took more effort than is normal or customary for its other interpleader actions.  (Doc. 138 at 13.)

Security Life is correct that attorney's fees are commonly awarded to the stakeholder in interpleader actions such as this.  See Kawasaki Kisen Kaish v. All City Used Auto Parts, 306 F. App'x 480, 482 (11th Cir. 2000).

---

[6]  In a previous order the Court denied Security Life's request for $8,800.00 in reasonable costs and fees because Security Life's interpleader claim arose out of its normal course of business.  (Doc. 31 at 4.)

However, as this Court has already discussed (see Doc. 31), an award for attorney's fees and costs in an interpleader action is within the discretion of the Court. Prudential Ins. Co. of Am. v. Boyd, 781 F.2d 1494, 1497 (11th Cir. 1986). An exception applies when the "stakeholder's interpleader claim arises out of the normal course of business." Mandalay Shores, 21 F.3d at 383. This exception applies where a company routinely avails itself of interpleader to resolve disputed claims that regularly arise in the normal course of business, a "standard typically . . . applied" to insurance companies like Security Life. Id.

Here, the issue for the Court is whether the circumstances have changed such that Security Life is now entitled to attorney's fees and disbursements. While Security Life is a proper interpleader and has been discharged of its interpleader liabilities, the Court cannot find that the actions related to this litigation fell outside the scope of the normal course of Security Life's business. Security Life alleges that since the filing of the interpleader, the litigation has been "extraordinary" and "involving a dispute solely between the other parties based on their ambiguous contracts and allegations of forgery and other misconduct." (Doc. 98 at

24.)  However, the "extraordinary" amount of litigating should not come as a surprise to Security Life.  Security Life undertook to issue a policy with $5,000,00.00 in proceeds and requiring over $30,000.00 in monthly premium payments.  As the parties are undoubtedly aware, when such sums of money are involved, the issues are more complex, the claimants are increasingly litigious, and, as a result, the interpleader itself has added responsibilities.  Such is the case here.  As an insurance company, Security Life routinely files interpleader actions and is in the best position to allocate the costs associated with such actions to the customer.  See Mandalay Shores, 21 F.3d at 383. After careful consideration, the Court has determined that this interpleader action, as well as the related counterclaim, arose in the normal course of Security Life's business.  Accordingly, Security Life's request for attorney's fees and disbursements is **DENIED**.

## CONCLUSION

For the foregoing reasons, Security Life's Motion for Summary Judgment on SEBN's counterclaim and Motion for Interpleader are **GRANTED**.  Additionally, Security Life's request for attorney's fees and disbursements is **DENIED**. Security Life is **DISMISSED** from this action.  The Clerk of

23

Court is **DIRECTED** to **TERMINATE** Interpleader Plaintiff and Counter Defendant Security Life.

SO ORDERED this **29**ᵗʰ day of August 2012.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA